SAMUEL E. NIECE v. THOMAS PERCY.

1 EQUIPMENT AS PART OF OIL LEASE.

In an oil field when parties negotiate respecting a lease which is in oper-
ation either to mortgage it, or sell it, they consider the equipment used
in operating the lease as part of the lease; but if purchased at judicial
sale the title obtained is limited ordinarily to the terms of the decree
of sale.

2. LOSS BY ESTOPPEL OF RIGHT TO URGE A CLAIM.

When the owner of an oil lease which is about to be sold on execution
urges a party to purchase such lease and is present at the sale and hears
the announcement that the sale includes the equipment used in operating
the lease and still urges such party to bid, having some hope of self bene-
fit from such party's purchase, he thereby estops himself from afterwards
claiming that the sale of the lease did not carry with it such equip-
ment even though such a claim might have been valid had he not estopped
himself from setting it up.

[For other cases in point, see 4 Cyc. Dig.. "Estoppel," §§ 500-507.—Ed.]

3. ADMISSIBILITY OF EVIDENCE TO RELIEVE AGAINST DOCTRINE OF CAVEAT EMPTOR.

Where the purchaser of an oil lease at judicial sale, acting somewhat in the
interest of the defendant owner and thereby relieved as between the de-
fendant and himself from the application of the doctrine of *caveat emptor*.
evidence as to the understanding between the original owner and himself
at the time of the sale, as to whether the appurtenances were included
with the lease, is admissible in a subsequent action by the original owner
to recover from the purchaser the value of the appurtenances.

ERROR to Wood common pleas court.

**Seney & Seney,** for plaintiff in error.

. Estopped by silence. *Fisher* v. *Mossman,* 11 Ohio St. 42; *Pennsyl-
vania Co.* v. *Platt,* 47 Ohio St. 366 [25 N. E. Rep. 1028].

Judicial sales. *Morgan* v. *Mason,* 20 Ohio 401 [55 Am. Dec. 464];
17 Am. & Eng. Enc. Law (2 ed.) 960.

**Baldwin & Harrington,** for defendant in error.

PARKER, J.

This case comes into this court on error. Mr. Niece was plaintiff
and Mr. Percy defendant in the court of common pleas. The action
was brought to recover a money judgment, the amount claimed being
$1,655, for and on account of the alleged conversion by Percy of certain
property of that value of which Niece claimed that he was the owner.
The property consisted of certain equipment on oil leases, being three

Wood County.

derricks, 1,125 feet of five, and five-eighths-inch casing; 3,700 feet two-inch pipe; 3,700 feet sucker rods; one twenty-five-horse power boiler, two steam engines; one two hundred and fifty-barrel tank; one one hundred-barrel tank; 1,000 feet of two and one-half-inch line pipe; 500 feet two-inch pipe; 3,000 feet one-inch pipe; one boiler; 1,000 feet of shackle rods, and possibly some other equipment.

This property constituted the equipment of certain oil leases of lands situate in Hancock county. Mr. Niece was formerly the owner of the leases and equipment, and the leases were sold under decree of foreclosure of mortgages given by Niece, and on account of debts contracted by Niece. It is claimed by Niece that the decree and the sale did not carry the title of this equipment to Percy; that all Percy took under the decree of sale was the right that the lessee had acquired from the lessor, to wit, the leasehold interest; that he took no part of the equipment.

It is contended on behalf of Percy that he purchased at sheriff's sale the equipment of the leases as well as the leasehold interests, and he bases his claim upon three distinct propositions or grounds: First, that the decree by its terms covered this equipment; second, if the decree standing unexplained did not by its terms cover the equipment, that the testimony of witnesses showing the meaning of the word "lease" as used in the decree and order of sale, etc., and showing that in the oil field among men acquainted with the business of dealing with leases, the word "lease" is understood to cover the equipment, that therefore the decree and order of sale carried the equipment; third, it is contended that Niece is estopped from claiming this equipment by reason of certain acts on his part which induced Percy to purchase under the belief that he was acquiring the equipment as well as the leasehold interest.

We are not prepared to hold that under the terms of the decree, even as explained by the testimony of witnesses touching the use of the word "lease" among oil men or in the oil field, and in the absence of the element of estoppel *in pais* that a sale would cover the personal property on the lease, though we are well satisfied that the word "lease" as used in the oil field commonly covers the equipment. The decree itself is not free from ambiguity. The journal entry sets forth that the parties appeared with their attorneys, and the matter was submitted to the court upon the pleadings and the evidence, "upon consideration whereof and being fully advised in the premises, the court found that on December 8, 1900, S. E. Niece was the owner in fact of the described oil and gas leases, together with the appurtenances thereunto belonging, including all oil wells located thereon, all boilers and engines, tanks,

Niece v. Percy.

tools, pipes and other oil well appliances," to wit: (and then the leases are described; that is to say, the land covered by the leases), so that in that part of the decree the court appears to be treating the equipment of the leases as an appurtenance thereto; and further along in the decree it is said "that said leasehold interest and property thereon were also transferred to said First National Bank," etc.; and again it is set forth that Niece entered into an agreement with the bank whereby Niece was to have the right to sell the oil run from said leases, and if he failed to pay the debt of the bank it was to run and sell the oil, the division orders therefor to be transferred and assigned by Niece to said defend- ant bank, and to "sell said leases and the property situate thereon as aforesaid" to satisfy and pay the indebtedness due from said Niece to said bank. When it comes to the part of the decree authorizing the sale of the property, it reads as follows:

"It is therefore considered, ordered and adjudged that unless the defendant, Samuel E. Niece, pay said sum of nine thousand eight hun- dred and fifty-three and fifty-four one-hundredths dollars ($9,853.54) with 8 per cent interest thereon from the eighth day of December, 1903, within three days from this date, that an order of sale issue directed to the sheriff of Wood county, Ohio (part of the property being in Wood county), and to the sheriff of Hancock county respectively, com- manding them to sell said leases herein described as located in their respective counties, and out of the proceeds arising from said sale, to pay, first, the indebtedness due said bank," etc.

The decree is ambiguous. It is uncertain whether the order to sell the leases therein described would include what in the early part of the decree was described as "appurtenances" of the leases.

The order under which this sale was made sets forth that the sheriff is "to proceed without delay and cause to be advertised and to sell ac- cording to law the following real estate situate in the county of Hancock and state of Ohio," and then is described these leases without any reference being made to the appurtenances or personal property.

We doubt if it was competent to prove, in order to fix the meaning of the terms of this decree that the word "lease" was used in the oil field in the manner that I have mentioned. But it is well settled by the authorities that where there are distinct defenses, and the verdict of the jury is general, covering all the issues, if there is no error touch- ing a single issue, a finding whereon in favor of the prevailing party would justify the judgment, and when it seems to be sustained by the evidence, the judgment will not be disturbed, even though there may be errors touching other issues; errors in the admission of evidence or

Wood County.

the exclusion of it, or the charge of the court—whatever the errors. This is laid down in a number of authorities that we had occasion to collate and examine recently. I call attention to the case of *Manson* v. *State,* 24 Ohio St. 590, and I cite this state case because substantially the same rule is held therein, though we know there is more strictness in criminal than civil cases. I cite also the cases of *McAllister* v. *Hartzell,* 60 Ohio St. 69 [53 N. E. Rep. 715]; *Sites* v. *Haverstock,* 23 Ohio St. 626, and *Holt* v. *Lamb,* 17 Ohio St. 374-384.

Under the evidence showing the transactions, the negotiations and dealings between Niece and Percy respecting this property, and with respect to this sheriff's sale of the property, it is clear that the sale as between Niece and Percy was not strictly of such adversary character as that the rule of *caveat emptor* can be invoked by Niece against Percy. It appears that at the solicitation of Niece, Percy became the purchaser at this sale somewhat in the interest of Niece. No doubt Niece expected more in the way of benefits to result to him from the sale to Percy than he in fact realized; but that does not alter the fact that Percy was purchasing somewhat in the interest of Niece and at the solicitation of Niece. And in view of that which we regard as a very important fact, a fact which discloses an estoppel *in pais,* and as we believe concludes Mr. Niece, we think the evidence of what was fairly understood by Niece and by Percy in the use of the word "lease" in their talk and their negotiations, and also as to the sense in which it was used in the decree, was admissible. After this decree was entered and the property was about to be brought to sale, Mr. Niece went to Mr. Percy and asked him to buy so that the property might not be sacrificed, and so that it might pay a greater amount of Niece's indebtedness than it would pay if it were sold at a low figure, and so that perhaps there might be something left for Niece; and, as I have suggested, it may have been contemplated by Niece that he would have an opportunity to redeem, in all of which plans for personal advantage he seems to have been disappointed.

They went upon the premises; they looked at what there was to be seen, to wit, all of this personal property which is mentioned here, this equipment, and they talked about the value of the property, and we think it is quite evident that they both took into consideration the equipment as well as the naked rights of the lessee acquired from the lessor through the written instruments. It was a lease in operation, and this equipment constituted a part of what might fairly be described as the "plant," a term applied usually perhaps to manufacturing institutions, but which we think may be fairly applied here; and our understanding

Niece v. Percy.

of the matter is, and the evidence justifies the finding, that in the oil field, where parties negotiate respecting a lease which is in operation, either to mortgage it or sell it, they consider the whole plant, including all the equipment. That is the rule unless there is some exception made; some distinct understanding to the contrary.

The testimony fairly establishes the fact, that at the sale the sheriff notified the bidders, including Mr. Percy, that the sale would carry not only the leasehold interest but the equipment; that the equipment was to be sold as part of the lease or with the lease; and Mr. Niece was present at the time and as the bidding progressed Mr. Niece urged Mr. Percy from time to time to raise his bid, and prevailed on him to raise his bid several hundred dollars. It is said by Mr. Percy, and we think it is unquestionably true, that if he had not understood that the equipment was being sold with the leasehold he would not have bid as high as he did.

After purchasing, Mr. Percy paid for the property. He then, in company with Mr. Niece, went upon the property. Mr. Niece at the time he went upon the property after the sale in company with Mr. Percy called attention to some padlocks, articles of small value, that he desired to have and keep, and Mr. Percy consented to his taking them. Mr. Niece at the time made no claim to anything more and did not make any claim to any of this property until months after this sale. It is said, however, that these things occurring after the sale could not give rise to estoppel, and that is probably true. I mention this only as indicating the understanding that Niece had of what occurred at the sale, and as corroborative of the testimony of Mr. Percy that there was talk about the equipment going with the leasehold interest, and that it was understood between him and Mr. Niece that such was the case.

Under the question of estoppel arising in this case we think the case of *Smiley* v. *Wright,* 2 Ohio 506, is in point. The syllabus reads:

"Widow entitled to dower, present at the sale under order of court, and asserts that the sale may be made free from dower, in consequence of which the price is increased, is thereby barred of dower, although the purchaser was not ignorant of her title."

I quote from the opinion:

"The next question made is, whether the circumstances attending the sale of the premises to Hartford, are such as bar Mrs. Smiley, in equity, from claiming her dower. The evidence upon this part of the case is clear, explicit, and uncontradictory. J. Eddington testifies that he attended the sale as agent of Hartford. The property was put up, subject to the widow's dower, and that it was bid up to about $2,400.

Wood County.

Fickas, after the property had been cried for some time at that price, and it was evident no greater bid could be obtained, expressed his unwillingness to have it sold for that price, and, at his request, the biddings were suspended, to enable him to consult with the widow, and ascertain if she would agree to have the property sold free of dower. Fickas and the widow went into a back room, where they were engaged some time in conversation, no part of which he heard. The witness was near the door of the room, and when they came out Fickas observed she had agreed to have the property sold free of dower. This was proclaimed at the front door by the crier; the biddings resumed, and the property struck off to witness, as the agent of Hartford at about $3,000. He would not have given over $2,400, had he not understood that the widow relinquished her dower. R. Moore's testimony is to the same effect. S. Salmon states he was the auctioneer. The widow was present, an l must have heard him cry the sale as free from her claim of dower, and that the property was sold as unencumbered by any right of dower. J. Worstell states, he was present at the sale. Mrs. Smiley was standing in the door, the auctioneer being on the step, when it was struck off. That he heard the auctioneer frequently state, that the sale was free of dower, while she was in a situation she must have heard him; and on one occasion replied to him she had no claim to dower.

"It is apparent from this testimony, which is altogether uncontradicted, that after the suspension of the sale, it was understood by the persons attending that the property was to be sold unencumbered by the widow's dower. That she was present, aiding by her acts and declarations, in confirming this opinion, and that the purchaser was thereby induced to bid about $600 more than he would otherwise have given."

It will be seen that the important point here is that the widow encouraged the bidders to believe that they were purchasing free from her dower. What the auctioneer said would have been unimportant had it not been ratified by the widow; and in the case at bar, what the sheriff said, standing alone, is of little importance. The question is, What was understood between Mr. Niece and Mr. Percy, or what did Niece give Percy to understand? Continuing, the court say, page 510:

"It is a well-established principle in equity, that if a person, having a right to an estate, permit or encourage a purchaser to buy it of another, the purchaser shall hold it against the person who has the right. * * *

"It is contended, on the part of the complainants, that the acts and declarations of Mrs. Smiley, at the time of the sale of the lots in

### Niece v. Percy.

question, ought not to bar her of the aid of a court of equity, because she was at that time ignorant of her rights, nor can they be considered as a fraud upon the purchaser, as he had notice of her title.''

And so it is urged here that the doctrine of estoppel does not apply to Mr. Niece because he had no more information as to his rights under that decree than Mr. Percy had. One was as fully informed as the other, and if under the terms of the decree and order of sale the title to the personalty was not involved and would not be carried, that Mr. Niece is not estopped. But it will be observed that in this case of *Smiley* v. *Wright, supra,* by the terms of the decree the dower interest of the widow would not have been carried by the sale. The sheriff had no authority under the decree of the court and order of sale to sell her dower interest; it was only by virtue of her declarations or her acquiescence that her dower estate was carried or extinguished and she was deprived of it.

In a case to which we are cited by counsel for plaintiff in error, the case of *Fisher* v. *Mossman,* 11 Ohio St. 42, it is said in the second clause of the syllabus:

''Where a mortgage on real estate is duly executed and recorded, and the mortgaged premises are subsequently sold at sheriff's sale, under a judgment in favor of a third party, against the mortgagors, obtained subsequent to the recording of the mortgage; and the mortgagee is present at the sheriff's sale, and keeps silent in respect to his mortgage: *Held,* that the mortgage being duly recorded, and there being no other evidence of actual fraud, the mortgagee is not estopped, by his mere silence, from afterward claiming the benefit of his mortgage lien.''

But in that case, as disclosed by the opinion, the mortgagee said nothing, and there was no declaration in his presence that the property was being sold free from incumbrances, or that any mortgage that he appeared to have upon the premises had been paid or was not a valid lien, or anything of that sort. No mention was made of the mortgage, and he was not called upon to speak touching his mortgage. As said by the court on page 47:

''If the mortgagee had said or done anything to deceive or mislead the purchaser, or if, on being interrogated in respect to his rights or claims, he had then deceitfully kept silent, the case would be very different from what it now is.''

We are also cited to *Pennsylvania Co.* v. *Platt,* 47 Ohio St. 366 [25 N. E. Rep. 1028] the third paragraph of the syllabus which reads:

''In order to estop an owner, from asserting title to his property, by his declarations or conduct, it must appear, that he was, at the time,

15   O. C. C.   Vol. 29

### Wood County.

apprised of the true state of his title; that he knew, or had reason to believe, his declarations or conduct would be acted upon by another; that they were acted upon by such other person in ignorance of the title, and that such person will be injured by allowing the truth of the admission by the declaration or conduct so acted upon by him, to be disproved.''

But that case upon its facts was widely different from the case at bar, and in that case, *Smiley* v. *Wright, supra,* is reviewed and approved. The authority of that case has never been questioned; it has stood as the law of the state for a great many years. We are of the opinion that the ignorance of title mentioned in the case of *Pennsylvania Co.* v. *Platt, supra,* is a very different thing from the alleged ignorance of Mr. Niece touching his rights in the premises. Mr. Niece knew all that it was essential for him to know in order that he might estop himself. It was not necessary that he should know that, technically, the title to this property could not be conveyed by the sheriff; it was enough for him to know that he was the owner of this property, and that he knew and with that knowledge he encouraged Mr. Percy to believe it was being sold at the sheriff's sale. He also acquiesced in the statement of the sheriff that the equipment was being sold with the leases, and we think that he is clearly bound under the doctrine of estoppel.

**Haynes** and **Wildman, JJ.,** concur.